UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RODRIGO ANTONIO HERNANDEZ-SANTELIZ,

Petitioner,

v. Case No.: 2:26-cv-02890-SPC-NPM

WARDEN, GLADES COUNTY DETENTION CENTER *et al.*,

Respondents.

______________________________/

# OPINION AND ORDER

Before the Court is Rodrigo Antonio Hernandez-Santeliz's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 5), and Hernandez-Santeliz's reply (Doc. 6).

Hernandez-Santeliz is a native and citizen of Nicaragua who entered the United States on May 22, 2022, and turned himself over to immigration officials. Customs and Border Protection (CBP) released him on an Order of Release on Recognizance two days later. Hernandez-Santeliz has a pending asylum claim, work authorization, and no criminal record. On July 4, 2026, roving CBP agents arrested Hernandez-Santeliz without a warrant and before he was in removal proceedings. CBP commenced removal proceedings on July 8, 2026, by issuing a notice to appear. The government claims a I-200 Warrant for Alien Arrest was also issued on July 8, 2026, but the warrant form attached

to the response is unsigned, undated, and completely blank except for a redacted file number.

In his habeas petition, Hernandez-Santeliz argues his warrantless arrest and detention violated the Fourth and Fifth Amendments, the Immigration and Nationality Act, and implementing regulations. In response, the government certifies it is detaining Hernandez-Santeliz under 8 U.S.C. § 1226(a) and argues he received due process in the form of a bond hearing.

The government also argues 8 U.S.C. § 1252(g) strips the Court of jurisdiction over Hernandez-Santeliz's claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we

read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The government's jurisdictional argument was perhaps reasonable a year ago, when courts and the legal community were grappling with novel issues presented by the government's new approach to immigration enforcement. But the dust has settled on this issue. This Court and others have repeatedly explained why § 1252(g) does not strip district courts of jurisdiction over habeas challenges to the legality of immigration detention. *See, e.g.*, *Acosta de Mata v. Sullivan*, 832 F. Supp. 3d 1338, 1346-49 (N.D. Ga. 2026) (collecting cases from across the country). In short, Hernandez-Santeliz is not challenging any of the three discrete actions covered by § 1252(g). The government's § 1252(g) argument is frivolous. *See Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022) ("A legal claim is frivolous when it has no reasonable chance of succeeding.").

The Court turns to the merits. The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693

(2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976).

The right at stake here—freedom from restraint—is a fundamental right. *Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty…"). When a government action impairs a fundamental right, courts "closely scrutinize the government action" to ensure the government acts "in a way that fundamental rights receive the respect and protection they are due." *Henry v. Sheriff of Tuscaloosa Cnty., Ala.*, 180 F.4th 1294, 1302 (11th Cir. 2026).

The Court finds a clear Fifth Amendment violation here because the government did not afford Hernandez-Santeliz the process required by governing statutes and regulations. 8 U.S.C. § 1226(a) states, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The timing of the warrant, notice to appear, and arrest is important. 8 C.F.R. § 1236.1(b) states, "*At the time of issuance of the notice to appear, or at any time thereafter* and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of

Form I–200, Warrant of Arrest." (emphasis added).[1] A notice to appear gives the alien notice of the alleged grounds for removability and commences the removal proceeding, in which the detainee can challenge both removal and detention. A noncitizen arrested before issuance of a notice to appear has no notice of the underlying reason for the arrest or an opportunity to challenge it.

There was no legal basis for the arrest because Hernandez-Santeliz was not yet in removal proceedings, and the government offers no reason why it could not have provided predeprivation process. In fact, it is undisputed that Hernandez-Santeliz was living openly in the United States and engaged with immigration officials to apply for asylum and obtain work authorization. What is more, officials did not suspect Hernandez-Santeliz of any criminal activity. The government provides no reason for urgency here.

The government violated Hernandez-Santeliz's right to due process by arresting and detaining him without a warrant and before he was in removal proceedings. "ICE does not have free-ranging ability to arrest and detain people, and figure out the reasons later, like they apparently did here." *Gopie v. Lyons*, No. 25-cv-5229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025).

---

[1] An immigration officer can arrest an alien without a warrant if the officer has probable cause the alien is in the United States in violation of immigration law and is likely to escape before a warrant can be obtained. *See* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(i), (ii). The respondents do not claim such probable cause existed here.

Accordingly, it is hereby

**ORDERED**:

Rodrigo Antonio Hernandez-Santeliz's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

(1) The respondents shall release Hernandez-Santeliz within 24 hours of this Order and give him telephone access so he can arrange transportation from the detention facility.

(2) The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on November 9, 2026.

Sheri Polster Chappell
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record